THE STATE ex rel. THEODORE REMLEY v. JO-
SEPH M. LOWE et al., Election Commissioners
of Kansas City.

**In Banc, March 12, 1910.**

1. MUNICIPAL JUDGES: Election by Districts. Under the
charter of Kansas City the council had power to provide by
ordinance for the election of an additional municipal judge by
the voters of the district over which he is thereby given juris-
diction. Said ordinance is not invalid because it does not re-
quire all municipal judges to be elected by the voters of the
whole city.

2. ————: ————: Charter Provisions. Section 8 of article 4
of the charter, requiring the judge of the municipal court to
"be elected by the qualified voters of the city," and section 10,
providing that "the city may by ordinance divide the municipal
court into two or more divisions, prescribe the time and place
of holding each of such divisions, and territorial district of
the city within which each division shall exercise jurisdiction,
and provide for the election, at any general election, of addi-
tional judge or judges to preside over such additional division,"
are somewhat indefinite as to the right of the council to divide
the city into two districts and provide for the election of a
judge from each, instead of by the whole city, but they are
not in express conflict, and an ordinance providing that each
judge shall be elected by the voters of the district is not in-
valid. Section 8 was meant to apply so long as there was one
municipal judge in the city; section 10 was meant to apply
when another was to be added and a district given to each;
and if so understood, they are harmonious.

3. ————: ————: Elected By Voters of District. The very
fact that said section 10 declares that the territorial jurisdic-
tion of such additional judge is limited to his own district is
persuasive argument that the charter means that he shall be
elected by the voters of his district only; otherwise, it would
have given each judge concurrent jurisdiction throughout the
city. [Per WOODSON, J., concurring.]

4. MUNICIPAL CONDUCT: Presumption. It is to be presumed
that the city council has acted and will act in a manner consist-
ent with official dignity, honor and probity. It is not to be pre-
sumed that, if under the charter the council has the right to

create municipal court districts, it will exercise that power so as to make a district of the lawless portions of the city with power in the law-defying elements therein to elect the judge.

Mandamus.

WRIT DENIED.

*John Kennish* for relator.

*Jno. T. Harding* for respondents.

GRAVES, J.—Relator filed his application for an alternative writ of mandamus against the respondents. Respondents entered their appearance and waived the formal issuance of the alternative writ, and have treated the petition as and for the alternative writ. To such pleading they have demurred. Under such circumstances we have treated the petition for mandamus as and for the alternative writ, and a demurrer thereto as a motion to quash such writ, and thus they will be treated in this case.

The facts pleaded and pertinent are about as follows: Respondents constitute the Board of Election Commissioners of Kansas City, Missouri. Relator was on the 25th day of February, 1910, named by the Republican party in a convention of delegates of such party as the Republican candidate for judge of the municipal court in and for said city. On the 21st day of February there was passed by the common council of said city an ordinance entitled:

"An ordinance, dividing the municipal court into two divisions and describing the time and place of holding of each of such divisions and the territorial district of the city within which each division shall exercise jurisdiction, and providing for the election at the next general election of judges to preside over the divisions of such municipal court."

This ordinance was approved by the mayor of said city on the 22nd of February and if valid went into effect at said time. Sections 1, 2, 5, 6, 9 and 10 of said ordinance, thus read:

"Section 1.—That the municipal court be, and the same is hereby divided into two divisions, to be known as 'Division No. 1,' and 'Division No. 2,' each of which shall be presided over by a municipal judge, who shall, at the time of his election, have been for five years a member in good standing of the bar of Jackson county, Missouri, and shall be learned in the law. He shall be a resident of the respective district in which the division of the municipal court over which he is to preside is situated.

"Section 2.—That the city is hereby divided into two municipal court districts, which shall be known as 'District No. 1,' and 'District No. 2.' . . .

"Section 5.—That there is hereby created an additional judge, who shall preside over such Division No. 2.

"Section 6.—That the municipal judges shall be elected at the next general election and at the succeeding elections by the qualified voters of the district in which is situated the court over which he is to preside, for a term of two years, at the same time and in the same manner as are other city or municipal officers.

"Section 9.—Whenever complaint in writing upon the oath or affirmation of any person competent to testify against the accused, or information in writing by the city attorney, shall be made to either of said municipal judges that any violation of an ordinance or other regulation of the city has been committed within the territorial district, of which he is the judge, for the breach of which any fine or penalty was imposed, such municipal judge shall forthwith issue a warrant for the arrest of the offender, which warrant shall be directed to the chief of police and shall be

executed by him, or any other officer or member of the police force.

"Section 10.—The powers, duties and jurisdic‑ tions of each of said municipal judges shall be co-ordi‑ nate, except as to territorial limits, and in case of the absence or sickness of one of the judges the other may preside over his division."

Section 3 of the ordinance prescribes the territo‑ rial limits of Municipal Court District No. 1, and sec‑ tion 4 the territorial limits of District No. 2. Section 7 locates the place of holding such court in said Dis‑ trict No. 1, and section 8 provides that the place of holding court in said District No. 2 shall be as may hereafter be fixed by the common council. Section 11 fixes the compensative salaries of the judges and pro‑ vides for the payment thereof: Such is the ordinance, and this ordinance the relator avers to be invalid for the following reasons:

"(a) That it is in conflict with and repugnant to the provisions of said article four, section eight, of the charter of said city.

"(b) That it is in conflict with and repugnant to article four, section ten, of said charter.

"(c)    That it attempts to divide said municipal court into two divisions and to divide the said city into two territorial districts and provides that the qualified voters of each of said districts shall elect a judge of a division of said municipal court to preside over the division exercising jurisdiction in the district in which said judge is to be elected; and said common council is and was without any power or authority to provide by ordinance for the election of a judge of the municipal court or a division or divisions thereof, except by the vote of the qualified voters of the entire city.

"(d)    That article four, section eight, of said charter provides that judges of the municipal court shall be elected by the qualified voters of the said city,

and that the said common council had and has no power or authority to change the manner of the election of said judge; that article four, section ten, of said charter confers upon said common council authority to legislate only with reference to the election of additional judge or judges of said court.''

Respondents contend that the ordinance is valid, and that inasmuch as the relator was not nominated as a candidate for judge of either of said municipal court districts, but for the city at large, they have, by resolution of their board, declined and refused to have relator's name printed on the ballots to be used in the coming city election to be held April 5, 1910.

Material portions of article 4 of the city charter are:

''Sec. 8.—There shall be a comptroller and a treasurer and a judge of the municipal court, who shall be elected by the qualified voters of the city, who shall hold their offices for a term of two years, and in all cases until their successors have been duly elected and qualified, and who shall, in addition to the duties prescribed in this charter, perform such other duties as may be provided by ordinance, pursuant thereto.

''Sec. 10.—There is hereby created a court not of record to be known as the municipal court of Kansas City. Such court shall be presided over by a judge who shall, at the time of his election, have been for five years a member in good standing of the bar of Jackson county, Missouri. The city may, by ordinance, divide the municipal court into two or more divisions, prescribe the time and place of holding each of such divisions, and territorial district of the city within which each division shall exercise jurisdiction, and provide for the election, at any general election, of additional judge or judges to preside over such additional division. When such municipal court is divided into divisions, each of such divisions shall possess the same powers and jurisdictions, except as to

State ex rel. v. Remley.

territorial limits; and any judge of any division may preside in any other division when required by ordinance so to do. . . . The municipal court and each division thereof, shall have jurisdiction of all cases arising under any provision of this charter or any ordinance of the city, and shall likewise exercise such jurisdiction as may be delegated to it by the general law of the State of Missouri. . . . The judge or judges of the municipal court shall be *ex-officio* justices of the peace, and have and exercise in addition to any jurisdiction conferred by this charter, such powers and jurisdiction as may be delegated to them by any law of the State of Missouri." . . .

Under article 3, which pertains to the "Powers of Common Council," we find the following:

"Thirty-fifth. To establish, create and prescribe the term of office, salaries and duties of all officers and the compensation and duties of all employees and agents necessary or proper in carrying into effect any of the powers of the city, in all cases not otherwise provided for by this charter, and to establish the compensation of jurors and witnesses, respectively, for their services, except as otherwise provided in this charter; provided, that the salary, fee or compensation of any officer shall not be changed during the term for which he is elected or appointed, and that no officer receiving a salary shall receive any fees or other compensation for his services."

Other matters contained in the charter, if material, will be noted in the course of the opinion. Counsel for relator in his statement of the case says the sole question for determination on the pleadings is the validity of the ordinance above set out in part, and counsel contra agree to this proposition. Such sufficiently states the case.

Relator contends that under these charter provisions, whether one or more than one judge of the municipal court is to be elected, the election must be by

the electors of the whole city, and that inasmuch as this ordinance undertakes to limit the election to the electors of the particular districts, the same contravenes and is in violation of the charter provisions and therefore void. Speaking of these charter provisions learned counsel for relator thus sharply states his contention:

"It is clear that their intention was one municipal court—to be divided at the proper time into two or more divisions, presided over by judges elected by the qualified voters of the whole city and whose jurisdiction might be limited *territorially* to districts for the convenience of the inhabitants thereof."

We do not agree with learned counsel upon this proposition. We have here two sections of the same charter, pertaining in a way to the same subject-matter, *i. e.*, sections 8 and 10 of article IV. It is the duty of the court to so construe the sections as to permit both to stand, if such can be done without doing violence to the well known canons of constructions. The charter provisions are not as clear and distinct in terms as they might have been, but we think the real intent of the law-makers (in this case, the people) can be gathered therefrom, and both sections given a meaning which will obviate a clash between the two. Article IV pertains to municipal officers, their qualifications and duties. Section 8 does provide for a judge of the municipal court, and does provide for his election by the qualified voters of the city, but section 10 is the portion of the charter which in fact creates the court and prescribes the qualifications of the judge or judges thereof. In this section the charter expressly authorizes the city to legislate of and concerning this court. The city is expressly authorized, (1) to divide this court into two or more divisions, (2) to designate the time and place for holding each of the divisions of such court, (3) the territorial district of the city in which each division shall exercise jurisdiction, and (4)

to provide for the election of an additional judge or judges to preside over such additional division. These are some of the things about which the charter says the city can legislate so far as concerns the municipal court. There is some ambiguity in the use of the words "additional judge." By section 8 the term is fixed at two years. By section 10 no new or "additional judge" could be elected except at a general election. An examination of the new Kansas City charter reveals the fact that such general city elections are to be held once in every two years. It thus appears that if the ordinance had not been enacted the whole electorate of the city would have chosen the first judge of the municipal court. But it is equally as apparent, that if just after his election this ordinance had been passed, then at the next general election there would be two judges to elect, because the first judge elected only holds office for two years. In fact all such judges can only hold for two years. So that had there been one election under the charter prior to the passage of the ordinance, then there would have been an election of two judges of the municipal court at the second election under the charter, and not simply an election of an "additional judge." There never could be an election of simply an "additional judge" because whenever an increase is made in the number of divisions or districts, no new man can be elected until the next general election, and at such time all such judges must be elected. The use of the term is therefore somewhat clouded.

But taking the two sections together, we are inclined to believe they both can stand, and yet a reasonable construction given them. To our mind the charter-makers by section 8 intended to provide for the election of a judge of the municipal court up to such time as the law-makers of the city chose to exercise their right to legislate concerning the matter, and that when the law-makers did legislate under the authority of section 10 such legislation would control the

whole situation. The two sections are inter-dependent. By section 8 the term of office is fixed, but no qualifications of the officers are named. By section 10 the court itself is created, and the qualifications of the judge or judges thereof are fixed.

The ordinance follows strictly the legislative powers granted by section 10, article 4, of the charter. It divides the court (theretofore created by section 10 of the charter) into two divisions. The power is clearly granted by the charter. It provides for the place at which such divisions shall hold court, and prescribes the territorial district in which such divisions shall exercise jurisdiction. These things are clearly within the charter powers. The ordinance in addition provides for the election of a judge for each division by the voters of the district wherein the said division of the court shall be held. This it is urged is in violation of the charter powers. The charter, section 10, article 4, which gives the city the right to legislate upon the subject, among other things says, "and provide for the election, at any general election, of additional judge or judges to preside over such additional division." We have discussed supra the looseness of the expression "additional judge," and we call attention now to the use of the word "division" in the quotation last above. It is clear under all the provisions that the power is given the city law-making power to create more than two divisions of their court, and yet the word appears in this connection in the singular number, when it should have read "division or divisions."

But be that as it may, there is here given a power to provide by legislation for the election of judges after the court has been divided. The power is granted in broad terms, leaving it to the legislative body to work out the details. This detail work has been done in the ordinance attacked in this case, and we think it is within the general power granted by the charter.

In other words, under the power granted to divide the court into two divisions, fix the districts wherein jurisdiction of each is to be exercised, and to provide for the election of the judge or judges, we take it that there is power granted to limit the election of such judges to districts, and by the voters of such districts. This we think is a rational construction of the two charter provisions. As stated elsewhere, section 8 evidently was intended to control the question by whom the judge of the municipal court should be elected prior to such time that the city through its legislature saw fit to act under the powers granted by section 10. But when the city did act under those powers and divided the city into districts then the judge of each division should be elected from the electorate of such district and by the electorate of such district.

It may be urged that such construction adds additional qualifications to those required by the charter. The charter prescribes but one qualification and that is that such judge at the time of his election shall "have been for five years a member in good standing of the bar of Jackson county, Missouri." Under this it could hardly be said that the framers of the charter meant that a candidate should be elected who lived at Independence or some other city in Jackson county, yet there would be a score or more living outside of Kansas City who would fill the measure of the charter provision, so far as the qualifications are named in express words. Such, however, was never the intent of the framers of this charter. They evidently meant that where the court had not been divided, the judge must have this expressed qualification, and in addition must be a resident of the city and be elected by the voters of the city. And to our mind it is equally as clear that the charter-builders meant that the city could later divide the court, prescribe the districts of jurisdiction, and when such was done, the candidate for the judge of such court for any particular division, must, in ad-

dition to possessing the charter qualification, be a resident of the district he is to serve and be elected by the voters of such district.

In Throop on Public Officers, sec. 73, among other things, it is said: "The general rule is that the Legislature has full power to prescribe qualifications for holding office, in addition to those prescribed by the Constitution, if any, provided that they are reasonable, and not opposed to the constitutional provisions, or to the spirit of the Constitution."

Mechem on Public Offices and Officers, sec. 66, says: "Where, however, the Constitution does not prescribe the qualifications, it is the province and the right of the Legislature to declare upon what terms and subject to what conditions the right shall be conferred. And where the Constitution has made some provision, but not exclusive ones, the Legislature may add such others as are reasonable and proper."

In the case at bar it is evident that the charter has not in express words undertaken to fix all the qualifications. The question of citizenship or residence is not mentioned, but must be read into the charter. It is a rule that where no limitations are fixed as to qualifications then the right, under our political system, to hold office is coextensive with the right of voting at an election to fill the office. Upon this question, Mechem, sec. 67, says: "Where no limitations are prescribed, however, the right to hold a public office under our political system is an implied attribute of citizenship, and is presumed to be coextensive with that of voting at an election held for the purpose of choosing an incumbent for that office; those and those only who are competent to select the officer being deemed competent also to hold the office."

Under this view, where the charter has named but one qualification, and has not made that an exclusive qualification, then when the Legislature of the city, acting under the charter divided the court and

fixed the districts of jurisdiction, such Legislature could also legally add the additional qualifications of residence in the district to be served.

Such is in keeping with the spirit of our institutions. [Throop on Public Officers, sec. 72; Commonwealth v. Lally (Pa.), 30 Leg. Int. 296.]

It is urged in the brief that, if this construction be given the charter provisions, the city legislature could put the "tenderloin" section of the city in one district and thus permit the "toughs" to select the man before whom they should be tried. We hardly deem this an effective argument. It is to be presumed that the city legislature has acted and will act in a manner commensurate with official dignity, honor and probity. To our mind the ordinance in question is a legitimate exercise of the charter powers conferred upon the ordinance-makers of Kansas City. If so, the ordinance is valid, and so we hold. The relator was nominated after this ordinance became effective. He was not nominated for either division of the municipal court. Under these facts and the law applicable thereto he is not entitled to have his name go upon the ticket, and respondents were right in refusing to print it thereon. The alternative writ is quashed, and peremptory writ refused. All concur. *Woodson, J.,* in separate opinion filed.

## CONCURRING OPINION.

WOODSON, J.—In concurring with the views expressed by Judge GRAVES in this case, I desire to add: it seems to me that if it had been the design of the framers of the charter that the judges to be elected were to be voted for by the electors of the entire city, then they would have given each judge co-ordinate jurisdiction over the entire city, as is true of the circuit court in those counties where the court is divided into two or more divisions, and would not have authorized the division of the city into districts, and have

limited the jurisdiction of each judge to the district over which he is to preside.

The policy of our form of government is, and has been, to limit the right to vote for district officers to the electors of such district, except where there is an express provision to the contrary found in the organic law, so in doubtful or mooted cases, this policy should prevail.

This is democratic, and, in the absence of express provision to the contrary, no one should be permitted to vote for an officer of a district different from that in which the elector resides.