STATE OF MISSOURI at the RELATION of CLYDE RUSSELL, Relator, v. HONORABLE IRA S. GARDNER, Judge of Division Number Two of the Municipal Court of Kansas City, Missouri, Respondent.*

Kansas City Court of Appeals. June 23, 1924.

1. **CONSTITUTIONAL LAW: Ordinances: Office: Officers: Vested Right: Office Subject to Control, Modification or Repeal by Legislative Body Creating It, and Holder Thereof Has no Vested Right Therein.** Where the legislative body has the right to create an office, the office is always subject to be controlled, modified or repealed by the body creating it, and the holder of an office has no vested interest of private right or property in it.

State ex rel. v. Gardner.

2. **COURTS**: Jurisdiction: Common Council Had Right to Change Territorial Limits of Divisions of Municipal Courts During Term of Office for Which Judges There of Were Elected and Serving. Under sections 8 and 10 of Article 4, Charter of Kansas City, Common Council not only had the right to fix the boundary line of divisions of municipal courts in the ordinance creating them, but as a necessary incident thereto, the power to change them from time to time, even during the term of office for which the judges thereof were elected and serving.

3. ———: ———: Ordinance: Reasonableness: Ordinance Changing Boundary Lines of Municipal Courts and Thereby Fixing Territorial Jurisdiction Held Not Unreasonable. The judge of a division of a municipal court having no vested right to retain under his jurisdiction as judge of a certain court division any part of the territory or district in which he was elected, an ordinance changing the boundary lines of his court *held* not unreasonable as to him, and not void for unreasonableness because three-fourths of the cases would be heard in another division.

4. **MUNICIPAL CORPORATIONS**: Ordinance: Burden of Showing Unreasonableness of Ordinance is Upon One Making Such Claim. Where an ordinance is claimed to be unreasonable, the burden of showing it is upon the one making the claim.

5. ———: ———: Motive of Common Council in Passing Ordinance or Law Will Not be Inquired into. Propriety or advisability of passing an ordinance or law is a matter for the legislative branch of the government, and its motive will not be inquired into.

---

*Headnotes 1. Officers, 29 Cyc., p. 1367; 2. Courts, 15 C. J., Section 199; 3. Courts, 15 C. J., Section 199; 4. Municipal Corporations, 28 Cyc., p. 397; 5. Constitutional Law, 12 C. J., Section 390; Municipal Corporations, 28 Cyc., p. 375.

· Original proceeding in prohibition.

WRIT MADE ABSOLUTE.

*Walsh & Aylward, James P. Aylward* and *A. A. Ridge* for relator.

*Solon T. Gilmore* and *E. F. Halstead* for respondent.

BLAND, J.—This is a proceeding in prohibition brought against the Honorable Ira S. Gardner, Judge of Division Number Two of the Municipal Court of Kansas City, Missouri. The provisional writ was granted and respondent filed his return. The relator filed a motion for judgment on the pleadings, and the case is submitted to us on this motion.

The facts as shown by the pleadings are that on the 24th day of April, 1924, relator was arrested at the northeast corner of 18th Street and Grand Avenue in Kansas City, Missouri, and taken before respondent, the judge of Division No. 2 of the Municipal Court of Kansas City, and charged with having violated a certain traffic ordinance of the city, the violation occurring at said northeast corner of 18th Street and Grand Avenue in said city. Relator filed a plea to respondent's jurisdiction which was overruled by respondent who announced his intention to hear the issues and determine the guilt or innocence of the relator as charged. Whereupon the relator applied to this court for a writ of prohibition against respondent, seeking to prohibit him from trying and determining the case for the reason that the alleged violation of the ordinance occurred in the territorial jurisdiction of Division No. 1 of the Municipal Court of Kansas City and without the territorial jurisdiction of Division Number 2 over which respondent presides as judge.

Kansas City has created and maintains municipal courts under the provisions of sections 8 and 10 of Article 4 of the Charter of 1908, which read as follows:

"Sec. 8. . . . There shall be a Comptroller and a Treasurer, and a Judge of the Municipal Court, who shall be elected by the qualified voters of the city, who shall hold their offices for a term of two years, and in all cases until their successors have been duly elected and qualified, and who shall, in addition to the duties prescribed in this Charter, perform such other duties as may be provided by ordinance, pursuant thereto.

"Sec. 10. . . . There is hereby created a court not of record to be known as the Municipal Court of Kansas City. Such court shall be presided over by a judge who shall, at the time of his election, have been for five years a member in good standing of the bar of Jackson County, Missouri. The city may, by ordinance, divide the Municipal Court into two or more divisions, prescribe the time and place of holding each of such divisions, the territorial district of the city within which each division shall exercise jurisdiction, and provide for the election, at any general election, of additional judge or judges to preside over such additional division. When such Municipal Court is divided into divisions, each of such divisions shall possess the same powers and jurisdictions, except as to territorial limits; and any judge of any division may preside in any other division when required by ordinance so to do. Such court, or each division thereof, shall have a clerk appointed in accordance with the Civil Service rules in this Charter provided, whose duty shall be to file all proceedings therein, issue all process and perform such duties as may be required by ordinance. The Municipal Court and each division thereof shall have jurisdiction of all cases arising under any provision of this Charter or any ordinance of the city, and shall likewise exercise such jurisdiction as may be delegated to it by the general law of the State of Missouri."

After the Charter was adopted and prior to the 22nd day of February, 1910, the Municipal Court of Kansas City consisted of a single division with a single judge; on that day the Common Council passed an ordinance dividing the court into two territorial divisions to be known as Division Number One and Division Number Two. These divisions have remained in existence until this day except that their territorial limits have been changed from time to time by ordinance. The last ordinance passed changing the boundary line of the two divisions of the court was approved on April 21, 1924.

Respondent was elected to the position of Municipal Judge of Division No. 2 on April 8, 1924, for a term of two years, beginning April 21, 1924. The ordinance changing the boundary line of the two courts was passed between the time of his election and the time he assumed the duties of his office, which was on said 21st day of April, 1924. The alleged violation of the ordinance occurred within the territorial limits of Division No. 1 of the Municipal Court if the ordinance of April 21, 1924, is valid, and within the territorial limits of Division No. 2 if it is invalid, for the reason that if it is invalid then the last prior ordinance fixing the boundary line of the two courts, approved January 31, 1912 placed the point where relator is alleged to have violated the ordinance within the boundary line of Division No. 2.

The attack made by respondent upon the ordinance of April 21, 1924, is that it attempts to divide the municipal court into new divisions or districts and it is claimed that under the Charter no ordinance can be passed to accomplish this purpose to take effect during the term of office of the judge whose district is affected; that the Common Council may not divide the city into two judicial districts unless it at the same time provides for the election of judges to preside in the districts so created. We assume that this means that the first judges of the new divisions cannot be selected in any other manner save by the people voting at a general city election. We are not prepared to agree to this contention of respondent nor that the case of State ex rel. Remley v. Lowe, 226 Mo. 308, 317, so holds. That was a case construing the ordinance of February 22, 1910, which changed the Municipal Court from one division into two divisions. It was held in that case that it was proper for the Council to provide in the ordinance therein attacked that the judges of the two divisions should be elected by the electorate of the respective territories included in the divisions, but the question of when the ordinance creating the divisions should become effective was not

presented or passed upon. Section 9 of Article 4 of the Charter provides for the filling of vacancies in such offices as Judge of the Municipal Court by election by the Common Council and we are not prepared to say that the Council may not create a new division of the court to take effect at any time and if that time is not after the ensuing general city election to fill the vacancy in the office thus created by an election by the Council. There is no question but that the present judges of the Municipal Court were elected by the electorate of their respective districts as they were constituted at the time of their election and that the ordinance of April 21, 1924, does not provide for the election of future judges except by the electorate of the districts as they shall be constituted at the next general city election.

But this is beside the question for the ordinance of April 21, 1924, does not purport to create any new district or division and we do not think that it in fact does so. The title of the ordinance is as follows:

"AN ORDINANCE RE-ESTABLISHING THE BOUNDARIES AND FIXING THE TERRITORIAL DISTRICT OF DIVISION ONE AND TWO OF THE MUNICIPAL COURT OF KANSAS CITY, AND AMENDING ORDINANCE NO. 11,434, APPROVED JANUARY 31, 1912.
"BE IT ORDAINED BY THE COMMON COUNCIL OF KANSAS CITY."

"Section L.—The following line shall be the dividing line between Municipal Court District No. 1 and Municipal Court District No. 2."

(Here follows the description of the boundary line between the two districts. Then appears the following:)

"That part of Kansas City, Missouri, lying north, east and west of the boundary line above described, shall comprise the territorial area within the jurisdiction of Municipal Court Division No. 1, and that part of Kansas City Missouri, lying south, west and east of

the above described boundary line shall comprise the territorial area within the jurisdiction of Municipal Court Division No. 2 of Kansas City, Missouri.

"The Municipal Judges duly elected and qualified for Municipal Court Division No. 1, and Municipal Court Division No. 2 shall immediately upon the approval of this ordinance have jurisdiction and preside over the territorial area hereby defined as falling within the jurisdiction of their respective divisions."

While the mere number or name given to a division is not the sole test as to whether the division is a new or old one, it is quite apparent that this ordinance merely changed the boundary line between two existing divisions of the Municipal Court, and does not attempt to create any new division or divisions.

It is claimed by respondent that section 10 of Article 4 of the Charter, covering the subject of the creation of divisions of the Municipal Court, contains no express provision governing the matter of changing the boundary line between such divisions. But we think that the Charter provisions by clear implication confer upon the Common Council the right to make such changes even if it does not expressly so provide and it would appear that it does although it is unnecessary for us to so hold. In this connection the general rule is that where the legislative body has the right to create an office, the office is always subject to be controlled, modified or repealed by the body creating it, and that the holder of an office has no vested interest of private right or property in it. [State ex rel. Attorney-General v. Davis, 44 Mo. 129; State v. Brown, 71 Mo. 454; Aikman v. Edwards, 30 L. R. A. 149 (Kansas); McCulley v. State, 46 L. R. A. 567 (Tenn.); State ex rel. v. Lindsay, 53 S. W. 950 (Tenn.).] However, respondent contends that the powers of the Common Council of Kansas City are not as full as those of a State Legislature. Respondent cites the case of McMurry v. Kansas City, 283 Mo. 479. The Supreme Court in that case, at l. c. 504, said:

"The powers of a city may be tersely stated as (1) those expressly granted by its charter; or (2) those fairly and necessarily implied from those granted; or (3) those essential to the objects and purposes sought to be attained. While the Kansas City Charter does not expressly mention pumping stations, the necessity of their construction having been conceded as an essential part of this system, that portion of the charter (Sec. 1, Art. 1, p. 96) which provides, 'the city may construct and maintain sewers, drains, and all works necessary for the disposition of sewage and garbage,' may reasonably be construed to include them as a part of the 'works necessary.' If, as the agreed statement of facts, which we cannot gainsay, discloses, as it does, that the sewer system would at times become not only inoperative but a menace to health without the pumping stations, then no cogent reason can be urged against their being made a part of this plan to be paid for in the same manner as the sewer. The reasons stated and conclusion reached for holding that there exists ample authority for the construction of the outlet applies with like force to the construction of the pumping stations under the facts applicable to this case."

The rule is stated in substantially the same way in 19 R. C. L., par. 75, pp. 769, 770, where it is stated—

"When, however, power over a particular subject-matter has been delegated to a municipal corporation by the Legislature without any express limitations, the extent to which that power shall be exercised rests in the discretion of the municipal authorities, and as long as it is exercised in good faith and for a municipal purpose, the courts have no ground upon which to interfere."

There are many cases where city councils have passed ordinances not expressly authorized by their charter or organic law that have been sustained by the courts on the ground that the council had implied authority to pass them. For instance, in the case of Bank v. Woesten, 147 Mo. 467, it was held that the City of St. Louis

had the right to require a contractor as a part of his contract for construction of a street, to agree to the maintenance of it for a reasonable time although the charter did not provide for such a stipulation.  The court in that case, l. c. 480, stated that, "The validity of the ordinances should be presumed and the ordinances upheld unless a repugnance to the charter clearly appears."  The courts have upheld the action of municipalities, under the rule of implied authority, in passing an ordinance for the purchase of real and personal property for municipal purposes, employing attorneys to represent it in court, compromising claims against it, erecting buildings for the housing of municipal offices, creating and improving street, lighting its streets, etc.  [19 R. C. L., pp. 770-984 inclusive; see also McMurry v. Kansas City, supra.]

We think there is no question but that in addition to the express authority conferred on the city by the Charter the Common Council not only had the right to fix the boundary line of the divisions in the ordinance creating them, but as a necessary incident to the right to create territorial divisions of the Municipal Court of Kansas City it possesses the right to change them from time to time as the exigencies of the situation might warrant.  It appears that the Municipal Court of Kansas City has for a number of years been divided into two divisions.  It may not be necessary for the proper and speedy disposition of the business of the Municipal Court of Kansas City to create another division yet the shifting of population or the character of the business handled by the two divisions may so change the situation that one court may find it is overwhelmed with nearly all of the business of the city while the other court would have little to do.  To say that the Common Council would not have authority to change the boundary line of the two courts so that the business would be more nearly distributed or the convenience of the inhabitants of the city better served would, indeed, be an unreasonable construction of the Charter of Kansas City, which gives

such broad powers to the Council to create divisions of
the Municipal Court and regulate that court and the
judges thereof. The Council undoubtedly has the im-
plied authority to change such boundaries even though
no express power to do so may be granted in the Charter,
and it will be borne in mind that the Charter places no
limit on the Council as to when it may make such changes.
This must be so as respondent claims the Charter con-
tains no express provisions concerning the matter. There-
fore the general rule applies in reference to the author-
ity of legislative bodies in such matters and that rule
is that where such a body has the power to create an
office or court it has likewise the power to change, modify
or control or even abolish the office or court created by
it, which includes the right to make changes in the bound-
ary line or territorial jurisdiction of such courts.

It is, however, strenuously argued that under the
provisions of the Charter this cannot be done to take
effect during the term of office of any judge who has
been elected so as to diminish his territorial jurisdiction
and by parity of reason to increase his jurisdiction. And
in this connection it is argued that unless there is an
express provision in the organic law to the contrary, the
Common Council has no right to deprive the voters of
their primary right "to services of district officers which
they themselves elected to continue throughout the dis-
trict for the full term for which the electorate chose him."
At first glance this argument contains much to appeal to
one's sense of fairness but when analyzed it is clearly
shown to be specious and without any foundation in rea-
son. A like point was fully disposed of in the case of
McCulley v. State, supra, where, quoting from the Su-
preme Court of Kansas in the case of Aikman v. Ed-
wards, supra, the Supreme Court of Tennessee covered
the point so well. We think the language of the Tennessee
court bears repeating here. It is stated in that case, l. c.
577—

"The fact that Benton and Madison counties have
been attached to these circuits since the judges were

elected cannot affect their election, or show they were not elected by the qualified voters of the circuit. It is true, they were not elected by the qualified voters of Benton or Madison counties, but they were themselves. elected by the qualified voters of their respective circuits. There has been no election for judges since the new counties were attached, but when there is an election the qualified voters of said new counties will, of course, participate. The Constitution, moreover, does not provide that the election shall be by the qualified voters of the respective counties, but by the qualified voters of the district or circuit. By #5708, Shannon's Code, 'the judges and chancellors are judges and chancellors for the State at large,' etc. The construction now sought to be placed upon this section of the Constitution would revolutionize and destroy our whole system. The Legislature has from time to time changed judicial circuits by adding and detaching counties, and its power to do so has never been challenged. [State v. McConnell, 3 Lea, 332; State ex rel. Whitson v. Algood, 87 Tenn. 163, 10 S. W. 310.] If the Legislature has the power to abolish circuits, which we think is no longer open to question in this State, it must follow that it can reassign its parts. Construing a similar provision of its Constitution, the Supreme Court of Kansas, in Aikman v. Edwards, 55 Kan. 751, 30 L. R. A. 149, 42 Pac. 366, said, viz: 'The most substantial objection that can be urged against such a transfer as is made by this act is that the people are placed in a district under a judge in whose selection they have had no voice, and who might not have been chosen if all the people in the enlarged district had been permitted to vote at the time of his election. The reasons apply against the transfer of one county with just the same force as against the transfer of all the counties included within a district. Acts of the Legislature transferring a county from one district to another have very frequently been passed during the history of the State, and their validity has never been questioned. It has never been contended, so far as we are aware, that the

Legislature is without power to change the boundaries of judicial districts by detaching counties from one and adding them to another, nor has it been doubted that the Legislature might do this during the continuance in office of any judge.' In our opinion, the power to detach counties from one circuit and add them to another is clearly within the constitutional grant of authority conferred upon the Legislature to ordain and establish from time to time circuit, chancery, and other inferior courts, and it is not a valid objection to the exercise of the power that it may result in placing the people of the county so transferred temporarily under the jurisdiction of a judge in whose election they have had no voice."

And at l. c. 574—

"It was proper for the representatives of the people, session after session, to have the power to provide such changes in the circuits and districts as should be shown by experience and observation to be necessary for the public good. This was the power conceded to the Legislature by the convention when it was provided that they should ordain and establish such circuit, chancery, and other inferior courts as they should deem necessary from time to time. The ordaining and establishing of such courts was to be the business of the Legislature through all time. It was impossible that the object to be accomplished could be effectuated by simply adding to the number of circuits or districts. Changes would or might become necessary, which involved the necessity of abolishing existing circuits or districts, in ordaining and establishing others, or in reducing the number, if experience should prove that the public good required a reduction. The power to abolish for the purpose of effecting these objects was therefore necessarily implied. It was not intended that the power to abolish districts should be exercised with a view of depriving any portion of the people of courts, but as a means of so ordaining and establishing the courts as would better promote the public good. It is proper to add that any attempt of the Legislature to exercise this restricted power of abolish-

ing existing courts, for the purpose of depriving the people of the requisite number and character of courts, would be an abuse of power, which we have no right to anticipate and which was not anticipated by the Constitution. Against such abuse of legislative power the ballot box is the legitimate remedy.''

At page 984, 7 R. C. L., it is stated—

''The power is within the constitutional grant of legislative authority to ordain and establish from time to time circuit, chancery, and other inferior courts; and the change of a county from one judicial circuit to another whose judges the qualified voters of the county had no voice in electing does not violate a constitutional provision that 'the judges shall be elected by the qualified voters of the district or circuit to which they are to be assigned.' Under a constitutional provision giving a State Legislature the power to increase the number of judicial districts beyond the number specified in the constitution, the Legislature has the power to abolish as well as to create, to diminish as well as to increase the number of districts so long as it does not reduce the number below that originally specified. Thus a Legislature has the power to transfer all of the counties comprising a judicial district into another, and thereby to abolish such district before the expiration of the term of office of the judge of the district so abolished.''

Section 10 of the Charter expressly provides that one of the judges of a division may preside over another division of the court, and in case he does so, of course, he is holding court for a district in which he was not elected and the electorate has no voice in his selection. In the case of sickness, death, resignation, or absence from the city of the duly elected judge of a division, the Charter does not provide that his successor should be elected by the people. As before stated, section 9, of article 4, provides in case of a vacancy in an elective office, the vacancy shall be filled for the remainder of the term by election by general ballot of the two houses of the Common Council in joint session.

It was contended by relator Remley in the case of State ex rel. v. Lowe, that the Charter, although allowing separate territorial districts, provided that the judges of all the divisions be elected by the city at large instead of by the electorate of their respective divisions. Our Supreme Court in disallowing this contention and in upholding the ordinance providing for the election of the judges by the electorate of their individual districts, held that when Kansas City created territorial divisions of the Municipal Court it was proper to provide that the judges thereof be elected by the electorate of their districts, stating that the Charter of Kansas City so allowed and that this was in conformity with the policy of our form of government, which has been to limit the right to vote for district officers to the electorate of such district except where there is an express provision to the contrary found in the organic law, and in doubtful cases this policy should prevail. However, this has no application to the case at bar. As before stated, the judge who is elected at the next general city election to the position of Judge of Division No. 2 of the Municipal Court will run in the district created by the ordinance of April 21, 1924, unless the district is changed in the meantime by another ordinance. Of course, there is no contention that the title of respondent to his office is not good by reason of the change in the district as he was elected by the electorate of the territory comprising Division No. 2 of the Municipal Court as it was constituted at the time of his election. An argument of this kind was made in the case of McCulley v. State, supra, and it was well disposed of in that part of the opinion in that case which we have quoted.

It is next insisted that the ordinance approved April 21, 1924, is void because it is unreasonable and arbitrary. Of course, the terms "unreasonable" and "arbitrary" used in this connection are technical, legal terms. This point is based upon the theory that at the time respondent was elected, the electorate thought that he was to serve over the district as then constituted, and that short-

ly after the election the Common Council changed the boundary line of the district. Thus, it is claimed, disfranchising a large number of voters in district No. 2 by giving another judge, in whose election they had no voice, jurisdiction over a large territory wherein they dwelt. That whereas the business of the two courts was formerly almost evenly divided now a great majority of the cases arising in the whole city will be tried in Division No. 1 and only a small percentage in Division No. 2 of the court. Respondent's return sets up these facts.

It is stated in 2 Dillon on Corporations, sec. 591, pp. 928, 929—

"It is of course within the power of the court to declare an ordinance to be *unreasonable and void on its face* by a mere inspection of the ordinance, if it is clearly of that character because of the inherent nature of its provision. But the power of the court to declare an ordinance void because it is unreasonable is one which must be carefully exercised. When the ordinance is within the grant of power conferred upon the municipality, *the presumption is* that it is reasonable, unless its unreasonable character appears upon its face. But the courts will declare an ordinance to be void becaue unreasonable *upon a state of facts being shown* which makes it unreasonable. If the ordinance is not inherently unfair, unreasonable or oppressive, the person attacking it must assume *the burden of affirmatively showing* that *as applied to him* it is unreasonable, unfair, and oppressive. And an ordinance general in its scope may be adjudged reasonable as applied to one state of facts and unreasonable when applied to circumstances of a different character." [See, also, Morse v. City of West Port, 110 Mo. 502, and St. Louis v. Theatre Company, 202 Mo. 690.] In the Morse case l. c. 508, 509, the court said—

"And where, as here, it must be conceded that the municipal corporation has the general power to pass the litigated ordinance, the mere passage of the ordinance makes out a prima-facie case for the validity of the ordinance, so far as concerns any question of unreasonable-

ness; the presumption is in favor of the exercise of the power by the city authorities, as being a reasonable and legitimate exercise of such power. When the courts are called upon to exercise the judicial power in declaring a municipal ordinance unreasonable, they will make such a declaration only when the prima-facie case made by the passage of the ordinance is overcome in the most satisfactory manner. [State v. Inhabitants of Trenton, 20 Atl. Rep. 1076.]''

We have already disposed of the contention that the ordinance is void for the reason that the boundaries were changed after the election of respondent and have shown by many authorities that the Common Council possessed the power to so change them to take effect even during the term of office for which the judge of the court has been elected and is serving. There is nothing in the Charter limiting the right of the Common Council to any specified time in passing such an ordinance. We do not think that respondent has shown facts sufficient to justify the court in declaring illegal the action of the Common Council in whose discretion the matter of changing the boundary line of the court is vested. From what we have said it is quite apparent that the ordinance as applied to respondent is not unreasonable for the reason that he has no vested right to retain under his jurisdiction as Judge of Division No. 2 of the court any part of the territory in which he was elected and, of course, he has no right to retain jurisdiction in any larger number of cases than the Common Council sees fit to give Division No. 2 jurisdiction over as an incident to changing the boundary line of the two courts. The passage of the ordinance of April 21, 1924, certainly will work no hardship on respondent individually as it is stated the change will result in giving the judge of Division No. 1 three-fourths of the cases. Whether the working of a hardship upon the public by the passage of the ordinance would justify the court in declaring it void for unreasonableness and whether respondent in this proceeding can raise such a point on behalf of the public, are questions that we need not de-

cide, but will assume for the purposes of this case that these matters must be decided in favor of respondent.

However, it is not pointed out how any hardship will result to the public even though the result of the passage of the ordinance of April 21, 1924, is to vest in Division No. 1 jurisdiction over three-fourths of all the cases arising from all the arrests made within the limits of the city. It is not shown how the public would even be inconvenienced. Whether inconvenience would result would depend upon many things; for instance, the size of the territory to be served, the population, the ability of the judge to keep up with the work, the location of court, etc. It is a notorious fact that the business of the various courts of this State is not equally distributed, either now or was it when a great number of those courts were created, yet no one has ever thought that the acts of the Legislature in establishing these courts and changing their territorial jurisdiction were not matters exclusively for the attention of the Legislature.

And, in addition to this, the fact that the ordinance may result in Division No. 1 of the Municipal Court having brought before it a greater number of persons arrested than those brought before Division No. 2 does not necessarily mean that the work of the two courts will not be evenly divided or reasonably so. It is well known that some class of cases require a longer time for disposition than others. The disposition of a mere number of cases by and of itself is not conclusive evidence as to the amount of work the court is required to do. There are no facts presented showing that the number of cases of a given class arising in the territorial limits of the two courts will be the same. It must be borne in mind in this connection that the burden is upon respondent to show the unreasonableness of the ordinance.

Prima-facie it is a reasonable and valid ordinance. The Common Council in the exercise of its discretion may have found that the cases arising in Division No. 2 of the court after the fixing of the new boundary line will be of such character that it will require approximately as

much time and attention of the judge of that court as those cases that will arise in Division No. 1 will require of the judge of that court. The jurisdiction to inquire into such matters is vested in the Common Council, which is well equipped to make such investigations, and not in the courts which have no legislative authority or right to review such discretionary matters. These matters are vested in the Common Council which represents in such things the sovereign will of the people of the city. From this and like considerations, it is quite apparent to us that this is not an instance where this court can declare the ordinance void for unreasonableness.

It must not be forgotten that our government, national, State and city, is divided into three co-ordinate branches, legislative, executive and judicial, and from the beginning of this country under the Constitution the courts have jealously guarded the rights of each of these departments of government from the encroachment of another. In our system of government the matter of passing laws is vested exclusively in the legislative branch of the government which, in the municipality of Kansas City is the Common Council. This jurisdiction is restricted only by the organic law but the matter of the *propriety* or *advisability* of passing an ordinance or law, it is universally held, is a matter for the legislative branch of the government, and its motive in passing a law will not be inquired into. If the courts may review these matters the legislative branch might as well be abolished and that authority vested in the courts. As was held in McCulley v. State, supra, the courts have no right to assume that the legislative body, in exercising the powers conferred upon it, is acting to deprive the people of their right to have the courts constituted as they desire. But if such was the intention of the Common Council by the passage of the ordinance of April 21, 1924, its action was an abuse of power, and "against such abuse of legislative power the ballot box is the legitimate remedy" to select officials who will represent the popular will. As was held in State ex rel. v. Lindsay, supra—

"The court, in determining the constitutionality of a law abolishing courts, will not consider, on one hand, the fact that political parties and public sentiment have been demanding retrenchment and the abolition of useless courts, nor, on the other, that the Legislature was actuated by sinister motives, and sought to legislate a particular judge out of office."

From what we have said the motion for judgment on the pleadings should be and is sustained and the provisional writ of prohibition is made absolute. All concur.