John J. STRANDBERG, Jasper Liebstadter, Richard L. Hempel, Charles Eugene Cayot, Jack Cunningham, Raymond H. Starr and Thomas M. Johnson, Respondents,

v.

KANSAS CITY, Missouri, a Municipal Corporation, J. C. Nichols Company, a Corporation, Helendoris Murphy, Individually and as Trustee Under the Will of E. D. Fear, Deceased, Flora Anne Fear, Bonnie Ann Murphy, Walter L. Murphy, III, Patt Mortgage Company, a Corporation, and Dorothy Walthall, Appellants.

No. 51620.

Supreme Court of Missouri,
En Banc.

May 31, 1967.

Rehearing Denied June 21, 1967.

Charles F. Lamkin, Jr., James H. Hentzen, Kansas City, Kuraner, Oberlander, Lamkin & Dingman, Kansas City, of counsel, for respondents.

Herbert C. Hoffman, Guy W. Rice, Kansas City, for Kansas City.

Gage, Hodges, Park & Kreamer, B. Douglas Varner, Kansas City, for Helendoris Murphy, Flora Anne Fear, Bonnie Ann Murphy, and Walter L. Murphy, III.

Rogers, Field & Gentry, Reed O. Gentry, Kansas City, for J. C. Nichols Co.

STORCKMAN, Chief Justice.

This action seeks to declare invalid a Kansas City ordinance rezoning a six and one-half-acre tract of land from single-family and duplex-dwelling purposes to multistory apartment and hotel uses. The seven plaintiffs own homes outside, but nearby, the rezoned area. The defendants in addition to the city of Kansas City are the owner of the rezoned area and the prospective purchaser and developer of the area. The trial before the court without a jury resulted in a judgment declaring the ordinance void and permanently enjoining the defendants from enforcing the ordinance and from making use of the land pursuant to the ordinance. The defendants have appealed.

Two principal issues are presented on appeal. One is whether the ordinance is contrary to § 89.040, RSMo 1959, V.A.M.S., as amended Laws 1959, H.B. 493, § 1, and in violation of Art. I, § 2, Constitution of Missouri 1945, V.A.M.S., relating to general welfare and equality under the law. The other contention is that the ordinance did not receive a vote of three-fourths of the City Council as required by § 89.060, RSMo 1959, because the vote of the mayor was required for its passage and he was disqualified from voting because of a "conflict of interest". The transcript on appeal consists of 2,009 pages; a total of 199 exhibits were offered and all but eight were admitted in evidence. There was considerable duplication, however, and the evidence on essential issues takes a rather narrow range.

The Country Club Plaza is a high-grade shopping center and commercial complex in Kansas City of irregular shape, bounded on the south by Ward Parkway or Brush Creek, on the east by Baltimore, on the north in part by 45th Street, and on the west in part by Jefferson. Its central area is occupied by commercial, professional, retail, and general office facilities. Since World War II many luxury-type apartment buildings, office buildings, business and department stores, and parking facilities have been erected in and around the Plaza. The greater portion of the land and buildings in the Plaza proper is owned by J. C. Nichols Company, one of the defendants herein. The Nichols Company also owns considerable property in the periphery of Country Club Plaza and elsewhere in Kansas City. The Company is the pioneer developer in this area.

The rezoned area consisting of approximately six and one-half acres lies in the southwest quadrant of the intersection of Ward Parkway and Wornall Road. It is adjacent to Ward Parkway on the north and to Wornall Road on its east side. Pri-

or to the change complained of, the area was zoned in two categories; the greater part was R–2a for duplexes or dwellings for not more than two families, and a few lots were R–1b for single dwellings. In the rezoned area there are thirteen duplexes on Wornall Road and Ward Parkway and two single dwellings on 49th Street Terrace. Some of the duplexes were formerly single-family dwellings which have been converted to duplexes for two-family occupancy. The entire rezoned area is under the single ownership of the defendant Helendoris Murphy as trustee under the will of E. D. Fear, deceased. Mr. Fear was the father of Mrs. Murphy. West of the rezoned area, there is an R–2a district. North of the rezoned area across Ward Parkway is the Country Club Plaza zoned C–3. East of it across Wornall Road there is R–4, R–5 and R–6 zoning. The R–1b district, which is south of the rezoned area and the adjoining R–2a districts, extends south to 71st Street and is bounded on the west by State Line Road and on the east by Wornall Road. It is described in evidence as a beautiful residential area, characterized by winding roads taking advantage of natural contours of the land, by small parks and statuary, by expensive landscaping, shrubbery and flowers around the homes; it has many expensive residences surrounded by well-kept grounds. Plaintiffs' homes are located at the northern edge of this residential district near the rezoned area. Four of them are on lots on the north side of 49th Street Terrace adjacent to the rezoned area.

Under date of January 30, 1962, the defendant Helendoris Murphy, trustee, entered into a contract for the sale of the six and one-half-acre tract to the defendant J. C. Nichols Company for the sum of $885,-000. By this contract and supplemental agreements, the sale was conditioned on the area being rezoned to District R–6 and the successful outcome of any litigation attacking the rezoning ordinance. The Nichols Company proposes to erect on this six and one-half-acre tract a hotel and three or four multistoried apartment buildings. According to the alternate site plans in evidence, the hotel would be the farthest away from plaintiffs' homes and closest to the intersection of Ward Parkway and Wornall Road. It would have convention and meeting rooms for which there is a demand in the Plaza area, as well as restaurants and other facilities. The apartments would be located south and west of the hotel and would probably be twenty-stories high as permitted in an R–6 district. The hotel and apartment buildings would supply between 900 and 1000 units for living quarters.

The Nichols Company acting on behalf of Mrs. Murphy applied to the City Plan Commission for approval of the project. In due course, the Director of Traffic of Kansas City reported to the Board of Park Commissioners that although the project would generate traffic there was no sound basis for rejecting the project or reducing its magnitude for that reason, and the provision for an additional traffic lane on both Wornall Road and Ward Parkway would minimize greatly the possibility of increased congestion. The Board of Park Commissioners through its secretary thereafter notified the City Plan Commission that with certain immaterial provisos it had no objection to the rezoning. Initially, the professional staff of the City Plan Commission made an adverse report, and the Commission held a public hearing. Thereafter, under date of September 26, 1963, the City Plan Commission notified Mr. Ilus W. Davis, the mayor of Kansas City, and the members of the City Council that the Commission at its meeting on August 19, 1963, approved the proposed zoning amendment by a vote of five to one, with two members abstaining. The report of the City Plan Commission further states:

"The majority of the Commission believe that the reasonable potential for this area is exactly the same as that of all other land which has developed around the Plaza area, for multi-story apartment buildings.

"Zoning districts basically reflect conditions of existing land use. Hence the area surrounding the Plaza which have developed for multi-story apartments are zoned for such use. The small remaining portion which retains its low density residential character is likewise zoned as a low density residential district."

The rezoning ordinance, No. 29216, was passed by the City Council on October 25, 1963, and purports to be effective ten days thereafter. A favorable vote of three-fourths of all members of the City Council was necessary for the adoption of the ordinance because a protest against passage of the proposed ordinance was filed pursuant to § 89.060 by the owners of a sufficient area of the land adjoining the district proposed to be changed. The City Council of Kansas City consists of twelve members and the mayor. Therefore, ten votes were required for passage of the ordinance. The vote, including the ballot of Mayor Davis, was ten ayes and three noes. The plaintiffs contend that Mayor Davis was disqualified from voting because of a "conflict of interest".

Mrs. Murphy, as trustee, was represented in this transaction by Mr. Roy K. Dietrich a member of the law partnership of Dietrich, Tyler, Davis, Burrell and Dicus, of which Mr. Ilus W. Davis was also a member. Mr. Davis was inaugurated as mayor on April 10, 1963. The land purchase contract, among other things, provided that no application for rezoning should be filed until such application and the steps preliminary to such filing are approved by Mr. Dietrich, that he should be kept fully advised of all proceedings and that he should appear along with such other attorney as the buyer may select. This provision appears in the contract dated January 30, 1962. In a letter to Mrs. Murphy dated April 30, 1963, Mr. Dietrich confirmed earlier "talks with you [Mrs. Murphy] that due to the election of my partner, Ilus W. Davis, as Mayor, neither I nor my firm could continue to represent you and that we were therefore withdrawing as your attorneys."

With the letter Mr. Dietrich presented a bill for services rendered in the sum of $3,375. There is no evidence that Mr. Dietrich or any other member of the firm rendered any legal services for Mrs. Murphy after that date. The bill for services had not been paid at the time of the trial in November 1964. Mr. Davis testified he had not seen Mrs. Murphy prior to the trial and had not done any legal work for her. He knew that Mr. Dietrich, his partner, had represented Mrs. Murphy in connection with the property in question but he, Mr. Davis, never had anything to do with it. The witness identified six letters written to him by the plaintiffs urging him to vote against the bill. He testified he voted in favor of the rezoning. He did not receive from Mr. Dietrich or any other partner or associate of his firm any communication or solicitation for his vote. Mrs. Murphy testified that Mr. Dietrich withdrew as her attorney the latter part of April 1963 in accordance with an earlier agreement although his name still appeared as trustee in a deed of trust drafted and executed while he was representing her. The fee charged by Mr. Dietrich was on an hourly basis; it was not contingent in any respect. Mrs. Murphy testified that Mr. Dietrich had not pressed for payment because he knew her circumstances.

The trial court held that Mayor Davis was not disqualified from voting on the ordinance and that the court could not inquire into his motives for casting his vote, citing Coffin v. City of Lee's Summit, Mo.App., 357 S.W.2d 211. The plaintiffs contend that the trial court erred in so holding. The plaintiffs seek to create a "conflict of interest" and a consequent disqualification on several theories developed solely in their written argument. They cite Supreme Court Rules 4.06 and 4.37, V.A.M.R. dealing with lawyer-client relations, but such rules present no conflict or impropriety on the facts before us. They also cite a number of cases undertaking to demonstrate that Mr. Davis in voting as a councilman was dealing with a subject matter

in which he had a contractual or financial interest. This, too, is not borne out by the evidence in the case. All that is shown by the evidence is that Mrs. Murphy, a former client who is apparently solvent, owed a fee to the law firm of which Mr. Davis is a member for services rendered by another partner in the firm. It would serve no useful purpose to discuss the various decisions and other authorities cited by the plaintiffs. The evidence simply does not bear out any theory advanced by the plaintiffs.

Section 89.020 authorizes "the legislative body of all incorporated cities" to exercise zoning powers. It is well established in Missouri that the exercise of the zoning powers delegated to cities including the enactment of ordinances amending the comprehensive plan is a legislative function. Section 89.060, RSMo 1959, V.A.M.S.; Urnstein v. Village of Town and Country, Mo., 368 S.W.2d 390, 392[1]; Downing v. City of Joplin, Mo., 312 S.W.2d 81, 83[1]. As a general rule the courts will not inquire into the interests or motives of the members of a municipal legislative body in exercising their legislative functions. Coffin v. City of Lee's Summit, Mo.App., 357 S.W.2d 211; Kansas City v. Brown, 286 Mo. 1, 227 S.W. 89, 95[9]; State ex rel. Russell v. Gardner, 218 Mo.App. 217, 265 S.W. 996, 1002[5]; 101 C.J.S. Zoning § 324, p. 1121. There is nothing in this record which disqualifies Mayor Davis from participating in the passage of the ordinance. The issue is ruled against the plaintiffs.

Section 89.020 authorizes municipal legislative bodies to regulate and restrict the use of land and structures thereon for "the purpose of promoting health, safety, morals, or the general welfare of the community". Section 89.040 provides that such regulations shall be made in accordance with "a comprehensive plan"; it also specifies certain legislative standards. Section 89.050 provides for a public hearing before adopting regulations and restrictions and establishing district boundaries. Section 89.060 provides that such "regulations, restrictions, and boundaries may from time to time be amended, supplemented, changed, modified or repealed."

The first comprehensive zoning ordinance in Kansas City was enacted in 1923. Since then amendments to the zoning ordinance have been made from time to time and general revisions have been enacted which have reflected the amendments made during the interval between revisions. The revisions and amendments have changed the classification of various districts and established more specific and, in some cases, broadened classification of permissive uses within the districts. The comprehensive zoning ordinance as amended to January 1, 1963, is in evidence as plaintiffs' Exhibit 10. Plaintiffs' Exhibit 8 is a zoning map which reflects the zoning of the area in question after the adoption of Ordinance No. 29216 on October 25, 1963. It also shows the zoning of surrounding areas from approximately 35th Street on the north to 66th Street on the south and from Prospect on the east to State Line Road on the west. The six and one-half-acre tract and adjacent areas west and south of it had been zoned R–2a since 1923, either by virtue of a pre-existing nonconforming use or by later zoning to permit duplexes or two-family dwellings. This District R–2a as it was in 1951 is shown on the zoning map, defendants' Exhibit 172. It extended along the south side of Ward Parkway from Wornall on the east to Roanoke and Summit Drive on the west, and along the west side of Wornall from Ward Parkway on the north to 50th Street on the south. The rezoned area is composed largely of the middle portion of this R–2a district and what appears to be about nine lots previously classified R–1b at the southwest boundary of the rezoned area. The entire rezoned area is owned by the Fear Estate. Portions of the original R–2a district remain south of the rezoned area on Wornall and west of it on Ward Parkway. The only contact the rezoned area has with a District R–1b is at its southwest portion where it is adjacent to six or seven lots classified R–1b. It is in this

physical situation that the plaintiffs contend the "natural barriers" of Ward Parkway and Wornall have been breached and the rezoned R–6 district threatens and endangers the integrity of the large District R–1b in southwestern Kansas City.

■ The trial court concluded its rather lengthy memorandum of findings with this statement: "The efforts of defendants' witnesses to justify the rezoning ordinance were unconvincing and unimpressive." This and the tenor of other statements indicate a misconception as to the legal standing of a municipal zoning ordinance and who has the burden of establishing its invalidity. The rule in this respect, stated in 101 C.J.S. Zoning § 363, p. 1203, is that, "the one assailing the validity of a zoning ordinance or regulation has the burden of proof to establish that the ordinance is invalid or arbitrary or unreasonable as to his property, that there is no permissible interpretation which justified its adoption, or that it will not promote the safety, order, convenience, prosperity, and general welfare of the public." It is incumbent on the plaintiffs to establish the invalidity of the ordinance in question. State ex rel. Manchester Improvement Co. v. City of Winchester, Mo., 400 S.W.2d 47, 49[3]; Huttig v. City of Richmond Heights, Mo., 372 S.W.2d 833, 843[9]; City of Moline Acres v. Heidbreder, Mo., 367 S.W.2d 568, 571[2]; Miller v. Kansas City, Mo.App., 358 S.W.2d 100, 104[1]; Downing v. City of Joplin, Mo., 312 S.W.2d 81, 84[4]; Flora Realty & Investment Co. v. City of Ladue, 362 Mo. 1025, 246 S.W.2d 771, 778[6]. Unless the rezoning ordinance in question is clearly proved to be invalid, it must stand.

In general the plaintiffs testified that they had purchased their homes in reliance on the zoning in the district in which they were situated and the zoning in the adjacent district, and that the value of their homes would be depreciated by reason of the rezoning and the erection of the hotel and apartments in the nearby R–6 district. The plaintiff, John J. Strandberg, a bank-

er, testified that the aggregate value of his home and the eight houses to the west of him on 49th Street Terrace, assuming that the zoning ordinance had not been enacted, would be $385,000, and that the rezoning and development of the area as contemplated would reduce the value of the residence properties described to approximately $150,000. There was also evidence that the northern view of some of the plaintiffs would be interfered with by reason of the erection of the buildings on the rezoned area. On the other hand, there was evidence by the defendants that the value of property adjoining and in the vicinity would be increased by the erection of the hotel and apartment buildings of the kind proposed. Records of sales made recently tended to show a rise in values.

■ The fact that loss will be sustained through depreciation of the value of property in or adjoining the area rezoned is not controlling in determining whether the zoning ordinance is so arbitrary and unreasonable as to be invalid. Flora Realty & Investment Co. v. City of Ladue, 362 Mo. 1025, 246 S.W.2d 771, 779[8]; Huttig v. City of Richmond Heights, Mo., 372 S.W.2d 833, 840[3]; State ex rel. Oliver Cadillac Co. v. Christopher, 317 Mo. 1179, 298 S.W. 720, 726[6]; Miller v. Kansas City, Mo.App., 358 S.W.2d 100, 104–105[3]; 101 C.J.S. Zoning § 37, p. 746. Some readjustment of values is usually an incident of any zoning ordinance. All of the disadvantages attributed by the plaintiffs to the project may be translated into financial loss, that is, depreciation in the value of their properties. Their proof on this issue is by no means clear and convincing. It is largely opinion evidence of interested persons and the evidence of recent sales. At most the evidence raises a debatable issue and does not demonstrate the rezoning to be invalid.

In connection with the application of § 89.040, the plaintiffs assert that the objectives of this statute "must be reached by a zoning ordinance which has in view conserving the values of existing buildings,

and bears a demonstrable and substantial relationship to the welfare of the community." They cite such cases as Flora Realty & Investment Co. v. City of Ladue, 362 Mo. 1025, 246 S.W.2d 771; Huttig v. City of Richmond Heights, Mo., 372 S.W.2d 833; State ex rel. Housing Authority of St. Louis County v. Wind, Mo.App., 337 S.W.2d 554, and Colt v. Bernard, Mo.App., 279 S.W.2d 527. There does not appear to be any controversy about the statutory guidelines. The plaintiffs' statement repeats part of the statutory language. The entire statement on this subject from § 89.-040 is as follows: "Such regulations shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the values of buildings and encouraging the most appropriate use of land throughout such municipality." Section 89.020 also has a general statement of the purposes of the legislation. These are principles to be considered in determining whether the zoning ordinance is a valid exercise of the legislative power delegated to the City Council.

■ Under point I(A) of their brief, the plaintiffs assert that the zoning ordinance involved does not meet but on the contrary violates the criteria of the enabling statute § 89.040. In the first place, the enabling act is a series of statutes consisting of §§ 89.010 through 89.140. Further, the plaintiffs fail to distinguish from regulations and restrictions within a district and a change or modification of the boundaries of a district. The term regulations and restrictions as used in the enabling act relates primarily to the height and size of buildings, the size of yards and other open spaces, and the location and use of buildings and land. Section 89.030 provides that the local legislative body may divide the municipality into districts of such number, shape, and area "as may be deemed best suited to carry out the purposes of sections 89.010 to 89.140" and *"within such districts may regulate and restrict* the erection, con-

struction, reconstruction, alteration or use of buildings, structures, or land." Italics added. The section further provides that all such regulations shall be uniform "throughout each district, but the regulations in one district may differ from those in other districts". The following section, 89.040, opens with the statement that "Such regulations shall be made in accordance with a comprehensive plan".

■ At the trial the plaintiffs contended that their Exhibit 77 was the comprehensive plan of Kansas City. This is a document entitled a Master Plan for Kansas City which was prepared by the City Plan Commission in 1947 apparently for its own use; in any event, it is not an enactment of the City Council of Kansas City. The trial court found that the comprehensive plan was "the general zoning ordinance, if any, which is in effect at any particular time." This finding was in substantial accord with the testimony of defendants' witnesses. The plaintiffs assert that this is "ridiculous". We cannot agree. In a narrower sense there is a comprehensive plan for each of the districts in that the regulations and restrictions must be uniform for each class or kind of buildings throughout each district. In a larger sense the term may properly be applied to the general zoning ordinance in effect at a particular time including all valid amendments thereto. See City of Moline Acres v. Heidbreder, Mo., 367 S.W.2d 568, 572–573, and State ex rel. Hewlett v. Womach, 355 Mo. 486, 196 S.W.2d 809, 812[2]. The Kansas City Zoning Ordinance in effect in 1963, plaintiffs' Exhibit 10, is indeed quite comprehensive. In addition to providing regulations and restrictions for each of the various use districts, it has numerous general requirements and provisions designed to carry out the purpose and intent of the enabling act consisting of §§ 89.010 through 89.140. On the record before us, there is no showing that the amendatory ordinance here involved is not in accordance with the comprehensive plan.

The plaintiffs further break down the contention of noncompliance into ten additional items based on subjects mentioned in § 89.040. Under this point I(A), (a) through (k), only three Missouri cases are cited—Hoffman v. Kinealy, Mo., 389 S.W. 2d 745; State ex rel. Magidson v. Henze, Mo.App., 342 S.W.2d 261, and State ex rel. Sims v. Eckhardt, Mo., 322 S.W.2d 903. These cases involve building regulations and restrictions, and the proper agencies to carry out the grant of legislative powers. They are not helpful in this situation. The plaintiffs' remaining contentions under this heading are extremely tenuous. For example they assert that the identity of the site of the Battle of Westport will eventually be lost if the rezoning is accomplished. They say that this would violate the provision that regulations should be designed to preserve features of historical significance. Plaintiffs' Exhibit 27 is a photograph of a historical marker giving a description of the battle. According to the inscription on it, the marker was erected by the Native Sons of Kansas City, Missouri, on October 23, 1964, which was three days before the trial of this case began. A notation on the exhibit states that the marker is located 1400 feet southwest of the rezoned area. If the identity of the site has not been lost by the buildings already constructed in the vicinity and the lapse of a hundred years before the marker was erected, it is difficult to comprehend how the apartments and hotel over a quarter of a mile away will have that effect. Since the nature of the items appear in § 89.040, they need not be repeated here. The assertion that the regulations do not promote health and general welfare, and related matters, will be considered later so far as they enter into the larger question of whether the change of district boundaries was contrary to the general welfare. Otherwise the evidence does not make a case for relief under § 89.040, and the claim is denied.

██ The zoning statutes confer upon the municipalities specified a portion of the police power of the state. Such power is to be exercised by the municipal legislative body for "the purpose of promoting health, safety, morals, or the general welfare of the community". Section 89.020. The local legislative body "may divide the municipality into districts of such number, shape, and area as may be deemed best suited to carry out the purposes of sections 89.010 to 89.-140." Section 89.030. The district "boundaries may from time to time be amended, supplemented, changed, modified or repealed." Section 89.060. Under the grant of power to enact zoning ordinances, the legislative body of a city has the duty to determine the classification to be given any particular area and, unless it appears that the enactment of the city council is clearly arbitrary and unreasonable in that it bears no substantial relationship to the public health, safety, morals or general welfare, a court cannot substitute its judgment for that of the city council and the ordinance cannot be held invalid. Landau v. Levin, 358 Mo. 77, 213 S.W.2d 483, 485[2]; Kellog v. Joint Council of Women's Auxiliaries Welfare Ass'n, Mo., 265 S.W.2d 374, 377[3, 4]; Deacon v. City of Ladue, Mo.App., 294 S.W.2d 616, 624[9]; Downing v. City of Joplin, Mo., 312 S.W.2d 81, 84[5]; Huttig v. City of Richmond Heights, Mo., 372 S.W. 2d 833, 843. The applicable rule is stated in the Kellog case, 265 S.W.2d at page 377, in slightly different language but with the same legal effect: "It is particularly the duty of a City in enacting a zoning ordinance to say in what district a particular area of the City should be placed, and, although the reasonableness of a City's classification is doubtful or even fairly debatable, the judgment of a court may not be substituted for the judgment of the City as to the propriety and reasonableness of the classification. * * *. A court will not disturb legislative or administrative action in zoning unless beyond reasonable doubt the action is an abuse of discretion or an excess of power, having no substantial relation to the evils to be remedied or to the public health, safety, and welfare or other proper object of the police power." By these standards the evidence is not sufficient to

support a judgment declaring Ordinance No. 29216 to be invalid.

■ The evidence, some of which has been previously discussed, is highly persuasive that there is a present need which will extend in the future for this kind of hotel and apartment accommodations in the Plaza area. In exercising the zoning powers, a city council is justified in trying to anticipate future developments as well as present trends. City of Moline Acres v. Heidbreder, Mo., 367 S.W.2d 568, 573; § 89.040. In paragraph 48 of its findings the trial court conceded that the evidence raised "a debatable question" as to the need for luxury-type apartments and hotel facilities. However, the trial court's view was that the need could be met at other locations. There was evidence that the Nichols Company owned real estate at other locations where apartments were permitted, but none of them were large enough to accommodate the entire project that the Company proposed to put on the rezoned area.

■ The courts are concerned with the power of a city acting through its city council and not with the wisdom and expediency of the transaction since it is for the legislative body and not the judiciary to determine the policy of the law. Annbar Associates v. West Side Development Corporation, Mo., 397 S.W.2d 635, 655[19]; School District of Kansas City v. Kansas City, Mo., 382 S.W.2d 688, 698[17]; In re Kansas City Ordinance No. 39946, 298 Mo. 569, 252 S.W. 404, 407[1], 28 A.L.R. 295; 101 C.J.S. Zoning § 324, p. 1121. In the case at bar, the site of the abandoned E. C. White School was put forward by the plaintiffs as a place where the complex could be constructed, but the evidence did not establish that it was suitable or for sale. It is of interest that a similar contention was made in School District of Kansas City v. Kansas City, supra. It was said that the proposed library should be built on the E. C. White School site, already owned by the School District, rather than one near 47th and Main Streets, which the City had

agreed to let the School District use. The wisdom or expediency of rezoning the area in question was for the City Council and should not be interfered with under the evidence in this case.

We cannot share plaintiffs' alarm that the rezoned area will expand like a "cancerous growth" and destroy the District R–1b. It can as plausibly be argued that it will be a more effective barrier than the previous duplex-dwelling classification. There was evidence that some of the duplexes were in a bad state of repairs. The evidence of recent construction in the area as well as expert testimony showed a trend toward apartment dwelling. This is, no doubt, influenced by the rising cost of maintaining a detached single-family residence and securing needed help to do so. There is nothing in the evidence to indicate that the Nichols Company has departed from the kind of performance which has contributed much to the proper development of this area in Kansas City. It is as likely as not that the plaintiffs will ultimately be benefited. The evidence tended to show that this project is similar to other apartment dwellings that practically surround the Plaza proper and have the advantage of being in easy walking distance of this commercial and shopping district. Practically all new developments, commercial or residential, tend to increase motor-vehicle traffic on streets already used beyond rated capacity. The evidence tends to show that the amount of traffic increase is not sufficient to justify holding the rezoning to be arbitrary and unreasonable. See Huttig v. City of Richmond Heights, Mo., 372 S.W.2d 833, 840.

■ The plaintiffs further contend that the ordinance is a piecemeal departure from a comprehensive plan and constitutes improper "spot zoning". Ordinarily, the term "spot zoning" is used to denote an amendment to the municipal zoning law reclassifying one or more lots or parcels of land for a use out of harmony with the classification of the surrounding areas and without regard to the public welfare. State ex rel.

Christopher v. Matthews, 362 Mo. 242, 240 S.W.2d 934, 937[1]; 101 C.J.S. Zoning § 91. In 101 C.J.S. Zoning § 91, at pages 844–845, the rule is stated in this fashion: "Accordingly, a reclassification of only the lot or lots of a single person from a residential to a business, commercial, or industrial district, without lawful basis and without reference to the public welfare, is improper spot zoning." In this case the area has been reclassified to a less restrictive residential use but not to a business, commercial, or industrial district. Typical of improper spot zoning are: Allega v. Associated Theatres, Mo.App., 295 S.W.2d 849, rezoning a 20-acre tract in a residential zone in a city to a general business zone so as to permit the construction and operation of a drive-in theater; Numer v. Kansas City, Mo.App., 365 S.W.2d 753, rezoning a lot in a residential section to permit use of the property for a gasoline filling station; State ex rel. Cooper v. Cowan, Mo. App., 307 S.W.2d 676, rezoning an area in a residential district for use as a service station; Mueller v. C. Hoffmeister Undertaking & Livery Co., 343 Mo. 430, 121 S.W. 2d 775, rezoning an area in a residential district to a commercial district to accommodate the enlargement of a mortuary; Wippler v. Hohn, 341 Mo. 780, 110 S.W.2d 409, rezoning an area from multiple dwelling to a commercial classification for use as a garage building.

Whether a rezoning ordinance will be held invalid depends on the circumstances of each case. State ex rel. Christopher v. Matthews, 362 Mo. 242, 240 S.W. 2d 934, 937[2]; Kellog v. Joint Council of Women's Auxiliaries Welfare Ass'n, Mo., 265 S.W.2d 374, 377[3, 4]; Huttig v. City of Richmond Heights, Mo., 372 S.W.2d 833, 842[7]; Miller v. Kansas City, Mo.App., 358 S.W.2d 100, 106[8]. Much of the evidence bearing on this issue has already been referred to and discussed. The documentary evidence is quite convincing that the rezoning ordinance does not constitute improper spot zoning. The zoning maps show that as far back as 1951 the area in

question was bounded on the north by District C–3 for intermediate business, and on the east by District R–5 permitting twelve-story apartments and R–2a permitting duplex dwellings. By 1964 the eastern boundary of the area in question was all R–4, R–5, and R–6 districts. The rezoning ordinance, plaintiffs' Exhibit 101, shows that the area in question extends to the middle of Brush Creek on the north and the middle of Wornall Road on the east. The plaintiffs' main concern seems to be that the rezoned area will be extended south and downgrade the fine residential district in southwest Kansas City. The documentary evidence tends to demonstrate that this is most unlikely to happen. The zone map which is plaintiffs' Exhibit 8 shows a District R–5 area in the southeast quadrant of Wornall and Meyer Boulevard which is adjacent to this District R–1b on three sides. On the north is a C–2 district for local retail business on both sides of 63rd Street. This C–2 district extends into the R–1b area from the eastern boundary of the district westward to Wornall. Farther north in this District R–1b are several small patches of C–1, R–2a, R–4, and R–5 districts. The northern limit of this R–1b area east of Wornall consists of C–2 and R–2a districts. On the face of the maps and considering the history of development in the Plaza area, there seems to be little likelihood of this rezoned R–2 area extruding into the R–1b district through the small contact presented. The "entering wedge" which the plaintiffs fear is more likely to come from the other sources mentioned above. The extension of the apartment classification across Wornall Road to the west was in accordance with the growth and changing conditions in the area involved and encouraged the most appropriate use of the land. Under all the circumstances, it was not an unlawful departure from the comprehensive plan and did not constitute unlawful spot zoning. State ex rel. Christopher v. Matthews, 362 Mo. 242, 240 S.W. 2d 934, 938[5]; Miller v. Kansas City, Mo. App., 358 S.W.2d 100, 106[9]; Huttig v. City of Richmond Heights, Mo., 372 S.W.

**748**

2d 833, 842[8]; Kellog v. Joint Council of Women's Auxiliaries Welfare Ass'n, Mo., 265 S.W.2d 374, 377[5]; Hedin v. Board of County Commissioners, 209 Md. 224, 120 A. 2d 663, 666[3].

■ The plaintiffs' final contention is that the rezoning ordinance was enacted for the private purposes of J. C. Nichols Company and violates Art. I, § 28, Constitution of Missouri 1945, in that it results in taking of private property for private use. In essence the contention is that the value of plaintiffs' property for use as private residences will be depressed if the proposed construction is carried out and the Nichols Company will benefit in that the apartment and hotel would be within walking distance of the shopping center and the patronage of the tenants would result in greater rentals and revenue for the Nichols Company. This contention has been largely answered by what we have heretofore said. Additionally, it may be observed that there is no evidence that the Nichols Company will certainly profit. The construction of the complex is expected to take from ten to fifteen years. What may appear to be a profitable venture now might turn into a loss in the future. Furthermore, since zoning and rezoning is an exercise of the police power of the state, the public interest and welfare is being served and it cannot be said that § 28 of Art. I is violated although some private person might incidentally make a profit. Arata v. Monsanto Chemical Co., Mo., 351 S.W.2d 717; City of Clayton v. Nemours, 353 Mo. 61, 182 S. W.2d 57; In re Kansas City Ordinance No. 39946, 298 Mo. 569, 252 S.W. 404, 28 A.L. R. 295. The contention is denied.

We have considered all of plaintiffs' contentions and find them to be without merit. At most the evidence adduced tends to show that the reasonableness of the classification of the rezoned area is debatable and doubtful, but it is not sufficient to prove that the action of the City Council is clearly arbitrary and an abuse of discretion in that it bore no reasonable relation-

ship to the health, safety, morals, or general welfare of the community. Hence, the trial court erred in holding the ordinance invalid.

Accordingly, the judgment of the trial court is reversed. This court further finds the issues in favor of the defendants and against the plaintiffs and orders, adjudges, and declares that the Zoning Ordinance No. 29216 is not void but is a valid and subsisting zoning ordinance of Kansas City, and further orders that plaintiffs' petition be dismissed at plaintiffs' cost.

All concur.

SEILER, J., not participating because not a member of the court when cause was submitted.